IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| XIAOMING WU, | ) | |
| | ) | No. 22-cv-06443 |
| Appellant, | ) | |
| | ) | Judge Andrea R. Wood |
| v. | ) | |
| | ) | On Appeal from the United States |
| PATRICK S. LAYNG, United States Trustee, | ) | Bankruptcy Court for the Northern |
| | ) | District of Illinois, No. 22 B 04462 |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

Appellant Xiaoming Wu, an attorney, was retained by Debtors Julio Zambrano and Dora Zambrano to file a petition for Chapter 13 bankruptcy on their behalf. Shortly after initiating Debtors' Chapter 13 proceeding, Wu filed an application with the Bankruptcy Court seeking a $4,500 flat fee as compensation for representing Debtors pursuant to the Court-Approved Retention Agreement ("CARA"). However, the U.S. Trustee objected to Wu's application claiming that it contained false certifications. The Bankruptcy Court agreed and further determined that Wu had a history of making false certifications in CARA fee applications submitted in connection with Chapter 13 proceedings. Consequently, the Bankruptcy Court denied Wu's CARA fee application and also sanctioned him on account of his pattern and practice of making false certifications. Wu now appeals the Bankruptcy Court's order. For the reasons that follow, the Bankruptcy Court's order is affirmed.

### BACKGROUND

The following facts taken from the Bankruptcy Court's record of the underlying proceeding are undisputed.

On April 6, 2022, Wu and Debtors entered into an Attorney Retention Contract ("Retention Contract") under which Wu would represent Debtors in Chapter 13 bankruptcy

proceedings. Under the Retention Contract, Debtors agreed to pay Wu $4,500 for his services. Near the top of the single-page document, the Retention Contract states in bold text: "**In the event of any inconsistency between this contract and a Court-Approved Retention Agreement, the latter shall prevail.**" (Appellee's Br., App. at 3, Dkt. No. 13-1.[1]) At the same time, Debtors executed a separate wage assignment "[a]s security" for Wu's attorney's fees. (*Id.* at 4.) Under the wage assignment, Wu was entitled to garnish a portion of Debtors' weekly wages to collect any amounts they owed toward his attorney's fees. The wage assignment provides, in bold, underlined, and all-caps text that "**THIS WAGE ASSIGNMENT SHALL NOT APPLY TO AN ASSIGNOR WHO IS IN ACTIVE CHAPTER 13 BANKRUPTCY (NOT DISMISSED) AND SHALL HAVE NO EFFECT IN A PENDING CHAPTER 13 CASE**." (*Id.*)

Wu filed a petition for Chapter 13 bankruptcy on behalf of Debtors on April 19, 2022. As required under the Federal Rules of Bankruptcy Procedure, Wu submitted the "Disclosure of Compensation of Attorney For Debtor(s)" form and attached the Retention Contract and the wage assignment. About a month later, Wu filed a CARA fee application seeking compensation at the $4,500 flat-fee rate authorized by the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois. In particular, Local Rule 5082-2(C)(1) provides that "[i]f debtor's counsel and the debtor have entered into the [CARA], counsel may apply for a Flat Fee not to exceed the amount authorized by the applicable General Order [*i.e.*, $4,500]." However, "[i]f the [CARA] has been modified in anyway, a Flat Fee will not be awarded, and all compensation may be denied." *Id.* The Local Rule further states that:

---

[1] The Appendix to the U.S. Trustee's brief contains an organized presentation of the key documents in the Bankruptcy Court record, and therefore the Court references that Appendix for its record citations.

> The Flat Fee will not be awarded and all compensation may be denied if, in addition to the [CARA], the debtor and an attorney for the debtor have entered into any other agreement in connection with the representation of the debtor in preparation for, during, or involving a Chapter 13 case, and the agreement provides for the attorney to receive:
>
> (a) any kind of compensation, reimbursement, or other payment; or
>
> (b) any form of, or security for, compensation, reimbursement, or other payment that varies from the [CARA].

L. Bankr. R. 5082-2(C)(3).

To ensure compliance with Local Rule 5082-2(C), attorneys applying for the CARA's $4,500 flat fee are required to certify as follows:

> The attorney and the debtor(s) have either:
>
> (i) not entered into any other agreements that provide for the attorney to receive:
>
>> a. any kind of compensation, reimbursement, or other payment, or
>>
>> b. any form of, or security for, compensation, reimbursement, or other payment that varies from the [CARA]; or
>
> (ii) have specifically discussed and understand that:
>
>> a. the Bankruptcy Code may require a debtor's attorney to provide the debtor with certain documents and agreements at the start of the representation;
>>
>> b. the terms of the [CARA] take the place of any conflicting provision in an earlier agreement;
>>
>> c. the [CARA] cannot be modified in any way by other agreements; and
>>
>> d. any provision of another agreement between the debtor and the attorney that conflicts with the [CARA] is void.

(App. at 5.) Wu's CARA fee application included the required certification. And attached to Wu's fee application was the CARA that he had executed with Debtors just before filing their Chapter 13 bankruptcy petition. In addition, he attached a second disclosure of attorney

3

compensation form, along with copies of the Retention Contract and the wage assignment that Debtors executed on April 6, 2022.

The U.S. Trustee[2] objected to Wu's CARA fee application, arguing that the application falsely certified that Wu and Debtors had not entered into any other agreements besides the CARA or, if they did, they understood that the CARA could not be modified by any other agreements. According to the U.S. Trustee, Wu's certification was untrue and misleading because he required Debtors to enter into a wage assignment that would allow Wu to collect any outstanding attorney's fees even if the bankruptcy case was dismissed. The U.S. Trustee argued that the wage assignment conflicted with the CARA's provision stating that, "[i]f the bankruptcy case is dismissed after the court has granted the lawyer's application for compensation, the lawyer will not enforce the order granting the application against the debtor for any unpaid fees or expenses." (App. at 10.) Despite the CARA's prohibition against attorneys collecting unpaid fees after dismissal, the wage assignment purported to allow Wu to garnish his unpaid attorney's fees from Debtors' wages even in the event of dismissal. Thus, the U.S. Trustee contended that Wu's CARA fee application should be denied because the wage assignment improperly modified the CARA and because Wu had not sufficiently disclosed that he had accepted the wage assignment from Debtors. Moreover, the U.S. Trustee submitted evidence showing that Wu had submitted CARA fee applications containing the same false certifications in about 70 other Chapter 13 cases. For that reason, he requested that the Bankruptcy Court impose civil penalties and enjoin Wu from future violations pursuant to 11 U.S.C. § 526(c)(5).

---

[2] The U.S. Trustee is an official appointed by the U.S. Attorney General, who has authority to supervise the administration of bankruptcy cases within their assigned region. 28 U.S.C. §§ 581, 586(a)(3).

In response to the U.S. Trustee's objection, Wu admitted that he had his clients enter into wage assignments "for the sole purpose of collecting any balance of the Chapter 13 fee in the event of dismissal." (App. at 25.) Nonetheless, Wu denied that the practice ran afoul of the Bankruptcy Code, the Local Rules, or the CARA. Moreover, Wu emphasized that he never tried to hide the existence of the wage assignments but instead routinely included them when making the disclosures of attorney compensation required by the Federal Rules of Bankruptcy Procedure.

Following a hearing, the Bankruptcy Court issued an order—which was later amended for reasons not relevant here—sustaining the U.S. Trustee's objection. It found that Wu's certifications were both untrue and misleading. Consequently, it disallowed all attorney's fees sought by Wu in connection with representing Debtors. Further, the Bankruptcy Court determined that, due to Wu's history of repeatedly making the same untrue and misleading certifications, it would impose sanctions. Specifically, the Bankruptcy Court required disgorgement of half the fees Wu sought in all his other cases currently pending before the Bankruptcy Court, for a total sanction of $16,652.95. The Bankruptcy Court also directed Wu to take an ethics course from an accredited law school in the Chicago area. Wu now appeals the Bankruptcy Court's amended order.

## DISCUSSION

Federal district courts have jurisdiction to review bankruptcy court decisions pursuant to 28 U.S.C. § 158(a). When considering a bankruptcy appeal, a district court reviews the bankruptcy court's findings of fact for clear error while its conclusions of law are reviewed *de novo*. *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011); *In re Brittwood Creek, LLC*, 450 B.R. 769, 773 (N.D. Ill. 2011). When presented with a mixed question of law and fact, a district court's review "depends[] on whether answering it entails primarily legal or factual work." *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. of Lakeridge, LLC*, 138 S. Ct. 960,

5

967 (2018). In his appeal, Wu argues that the Bankruptcy Court erred in finding that the wage assignment conflicted with the CARA and, based on that determination, concluding that Wu made untrue and misleading certifications in his CARA fee applications and imposing sanctions for that reason.

### I. Wu's CARA Fee Application Certifications

Under the Bankruptcy Code, a "debt relief agency" is prohibited from "mak[ing] any statement . . . in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading." 11 U.S.C. § 526(a)(2). A "debt relief agency" includes an attorney for a debtor. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 239 (2010). In sustaining the U.S. Trustee's objection to Wu's CARA fee application, the Bankruptcy Court found that the wage assignment created a security agreement for a postpetition debt, which rendered untrue Wu's certification to the Bankruptcy Court that he had not entered into an agreement that provided for him to receive a security for his compensation that varied from the CARA. Even considering that Wu disclosed the wage assignment, the Bankruptcy Court found that his simultaneous certification that no security agreement existed was, at a minimum, misleading.

Wu disputes that the wage assignment was inconsistent with the CARA, arguing that it does not secure the CARA's flat-fee award but instead secures the prepetition obligation created by the separate Retention Contract. According to Wu, while dismissal of the Chapter 13 proceeding precludes enforcement of the CARA fee order, it does not bar him from enforcing the prepetition liability created by the Retention Contract. The Court disagrees. Wu relies on a far too clever distinction between the $4,500 flat fee authorized by the CARA and the $4,500 obligation created by the Retention Contract and secured by the wage assignment. At bottom,

6

Wu is trying to evade the CARA's bar against collecting the CARA's fee award following the dismissal of a debtor's Chapter 13 proceeding by creating a separate, secured obligation for that same sum through the Retention Contract and the wage assignment. Accepting Wu's distinction, however, would render the CARA's bar on post-dismissal enforcement toothless.

Moreover, Wu had no entitlement to enforce Debtors' Retention Contract once he decided to seek the CARA's flat fee as compensation. Upon entering into the CARA, Debtors' obligations under the Retention Contract were extinguished. As the CARA expressly provides, "[t]his agreement replaces any conflicting agreement between the debtor and the lawyer." (App. at 7.) Together, the Retention Contract and wage assignment purport to entitle Wu to a secured fee of $4,500, and that undoubtedly conflicts with the CARA's authorization of an unsecured award of the same sum. Notably, the Bankruptcy Court in this case is not the only one to conclude that Wu's wage assignments conflict with the CARA. *See In re St. John*, No. 22 B 02548, 2022 WL 4827351, at *2 (Bankr. N.D. Ill. Sept. 30, 2022) ("[Wu's] wage assignment provides a collection mechanism that clearly differs from, and is far more powerful than, what is provided in the CARA. It significantly alters the CARA's balance of benefits and risks to the debtor and the lawyer."). Thus, when Wu and Debtors entered into the CARA, the CARA replaced their prior agreements.

As he correctly notes, to satisfy the relevant certification, Wu had to certify either that he and Debtors had not entered into any agreement that conflicted with CARA *or* that he had specifically discussed with Debtors the impact that the CARA had on any earlier, conflicting agreements. Satisfying the second alternative requires, among other things, that Wu and Debtors understood that "the [CARA] cannot be modified in any way by other agreements" and "any provision of another agreement between the debtor and attorney that conflicts with the [CARA]

7

is void." (App. at 5.) No such understanding could have existed given Wu's own admission that he intended the wage assignment to be a means of collecting his fee in the event Debtors' Chapter 13 proceeding was dismissed. Consequently, Wu's representation to Debtors that the wage assignment survived the CARA and supplemented its provisions precludes him from satisfying that alternative certification.

Wu insists that all he was trying to do by having Debtors execute the wage assignment was ensure that he could collect all compensation to which he was rightfully entitled. However, if Wu wanted to ensure that he could collect his fees even in the event of dismissal, he had an option available to him. Attorneys for Chapter 13 debtors are not required to seek compensation under the CARA. Rather, Wu could have foregone the CARA and instead sought fees "using the 'lodestar method' under which a reasonable number of hours is multiplied by a reasonable hourly rate." *In re Brent*, 458 B.R. 444, 449–50 (Bankr. N.D. Ill. 2011). That, of course, is a more onerous process than the CARA process, as it requires a detailed itemization of services rendered and time expended. *Id.*; *see also* Fed. R. Bankr. P. 2016(a). Because Chapter 13 proceedings are less complicated and generate less fees than other bankruptcy proceedings, the Local Rules seek to simplify the process for attorneys in such proceedings by providing for a flat fee through the CARA. *In re Brent*, 458 B.R. at 450. But in exchange for the benefit of simplicity, an attorney must abide by certain conditions, including the bar on attempting to collect any unpaid portion of the flat fee following a dismissal of the case.[3] *See In re Gilliam*, 582 B.R. 459, 469 (Bankr. N.D. Ill. 2018) ("[T]he CARA procedures of this court set a presumptively reasonable fee in chapter 13 matters, and place conditions on how that presumptively reasonable fee may be sought.").

---

[3] The CARA flat fee is set at a rate that is ***presumptively*** reasonable compensation for the services performed in a standard Chapter 13 case. *In re Moravek*, No. 18 C 3482, 2018 WL 6067247, at *3 (N.D. Ill. Nov. 20, 2018) (emphasis added).

Thus, by seeking compensation under the CARA, Wu gave up any right he had to collect unpaid fees in the event of dismissal.

Finally, the Court rejects Wu's contention that his disclosure of the Retention Contract and the wage assignment had the effect of rendering his CARA fee application certifications truthful. It was at least misleading for Wu to certify that he had not entered into agreements with Debtors that conflicted with the CARA while, at the same time, disclosing the wage assignment that conflicted with the CARA. Not only is the CARA meant to make the compensation process more convenient for the attorney but its "[f]lat fees benefit courts because they save judicial time that a busy bankruptcy court would otherwise be required to spend dealing with detailed fee applications." *In re Brent*, 458 B.R. at 450 (internal quotation marks omitted). That purpose would be undermined if an attorney could avoid responsibility for false certifications by burying the truth in the papers attached to his CARA fee application. *See In re Jackson*, 401 B.R. 333, 339 (Bankr. N.D. Ill. 2009) ("Coy or incomplete disclosures that force the court to ferret out pertinent information will not do . . . ." (internal quotation marks omitted)).

For these reasons, this Court, like the Bankruptcy Court, finds that Wu made false certifications in his CARA fee application. Accordingly, the Court affirms the Bankruptcy Court's amended order sustaining the U.S. Trustee's objection to Wu's CARA fee application.

## II. Sanctions

Beyond arguing against the underlying misconduct, Wu does not separately challenge the propriety of the Bankruptcy Court's decision to impose sanctions for his pattern and practice of making the same false certifications as here in other Chapter 13 cases. Such a decision can be reversed only if the Bankruptcy Court abused its discretion. *In re Rimsat, Ltd.*, 212 F.3d 1039, 1046 (7th Cir. 2000) ("Unless the sanctioning court has acted contrary to law or reached an unreasonable result, we will affirm the sanctions decision."). And with this Court having found

9

that the Bankruptcy Court did not commit clear error in determining that Wu made false certifications in his CARA fee application, it is readily apparent that the Bankruptcy Court did not abuse its discretion in sanctioning Wu for that conduct.

As discussed above, 11 U.S.C. § 526(a)(2) prohibits a debtor's attorney from filing a submission in a bankruptcy proceeding that contains an untrue or misleading statement. Under § 526(c)(5), if a court finds that a person "engaged in a clear and consistent pattern or practice of violating this section," it may "impose an appropriate civil penalty against such person." 11 U.S.C. § 526(c)(5)(B). Here, the Bankruptcy Court noted the U.S. Trustee's evidence showing that Wu had made the same false certifications in about 70 other cases. Further, it accounted for the fact that Wu had been alerted to the issue prior to making the false certifications in this case when another bankruptcy court denied Wu's CARA fee application because "[t]he 'Wage Assignment' attached to the fee application is a violation Local Rule 5082-2C(3)." *In re Brabeck*, No. 21-07794 (Bankr. N.D. Ill. Aug. 19, 2021). Nonetheless, Wu continued to have Chapter 13 debtors execute wage assignments in cases where he sought compensation under the CARA. Given this history, it was not an abuse of discretion for the Bankruptcy Court to impose the ordered sanctions. The Court thus affirms the Bankruptcy Court's decision to impose a civil penalty pursuant to § 526(c)(5).

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's amended order sustaining the U.S. Trustee's objection to Wu's application for attorney's fees and granting related relief is affirmed.

ENTERED:

Dated: September 20, 2023

_____
Andrea R. Wood
United States District Judge

10